UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60407-Civ-LENARD
MAGISTRATE JUDGE P.A. WHITE

MICHAEL L. LISI,                    :

    Petitioner,                 :

v.                                  :        REPORT OF
                                             MAGISTRATE JUDGE
WALTER A. McNEIL,                   :

    Respondent.                 :
_____

## I. Introduction

Michael L. Lisi, a state prisoner confined at Sumter Correctional Institution at Bushnell, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his conviction and sentence entered in Broward County Circuit Court Case No. 04-02900.

This case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition with separate supporting memorandum of law (DE# 1, 2), the Court has the petitioner's response to an order regarding the limitations period, the respondent's response to an order to show cause with multiple exhibits, and the petitioner's reply.

## II. Claims

Discerning the actual claims presented by Lisi in this pro se habeas corpus proceeding has been no easy task. In his form petition, Lisi merely presents his four claims in a conclusory

fashion, stating either "Ineffective Assistance of Counsel" (grounds one and two) and "Misconduct by the State" (grounds three and four). <u>See</u> Petition at 5, 7, 8, 10. (DE# 1). After each claim, he however refers the Court to his separate memorandum of law. <u>Id</u>. In the memorandum of law, Lisi appears to raise the sole claim that the trial court improperly denied his motion for postconviction relief pursuant to <u>Fla.R.Crim.P</u>. 3.850 when it failed to attach relevant portions of the record to its order of denial and/or conduct an evidentiary hearing on his motion. <u>See</u> Memorandum of Law in Support of 28 U.S.C. §2254 Petition for Writ of Habeas Corpus at 11-12. (DE# 2). He then goes on to assert that he was entitled to relief on the basis of all grounds raised in his Rule 3.850 motion and subsequent motion for rehearing and he sets forth substantive argument to support his attack upon his conviction and sentence. <u>Id</u>. at 12-8. He makes the same argument in his Reply. (DE# 17).

When construing Lisi's petition and supporting pleadings liberally, as this Court must, <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), and when viewing his claims in the context of the entire file, it appears that Lisi is challenging his no contest plea and resultant conviction and sentence on the identical grounds raised in the state postconviction proceeding. This Court, therefore, disagrees with the Respondent that Lisi is solely alleging that he was denied due process of law in the state postconviction proceeding, because the trial court denied his Rule 3.850 motion without attaching portions of the record to its order and/or without first conducting an evidentiary hearing on the motion. The gist of this petition is that Lisi received ineffective assistance of trial counsel in connection with his no contest plea and resultant conviction and sentence and that his conviction and sentence are the product of prosecutorial misconduct.

III. <u>Procedural History</u>

On March 22, 2004, Lisi was charged by Information with the offense of dealing in stolen property. (DE# 16; Ex. B). The state subsequently requested that the case be assigned to the career criminal court based upon Lisi's extensive criminal history and the state also requested the court to declare Lisi a habitual felony offender. (DE# 16; Ex. C, H). Rather than proceed to trial, Lisi elected to change his earlier entered plea of not guilty to an open plea of no contest to the crime charged in the Information. (DE# 16; Ex. F, G). Pursuant to the open plea of no contest, Lisi was convicted of the crime charged and he was sentenced to a term of imprisonment of fifteen years as a habitual felony offender. <u>See</u> Transcript of plea proceeding conducted on February 18, 2005;[1] Transcript of sentence proceeding conducted on June 24, 2005.[2] <u>See</u> <u>also</u> DE# 16; Ex. G, J, K, L.

Lisi filed a timely <u>pro</u> <u>se</u> notice of appeal from his conviction and sentence and he was appointed counsel to represent him in his direct appeal. (DE# 16; Ex. N, O). After examining the record on appeal, appointed appellate counsel filed a motion to withdraw and a memorandum brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). (DE# 16; P, Q). Counsel stated that "a conscientious and careful examination of the record on appeal reveals no support for any error which could be conscientiously argued as a predicate for relief." <u>Id</u>. Lisi was permitted to file a <u>pro</u> <u>se</u> brief, which he did. (DE# 16; Ex. S). In his brief, Lisi claimed that his sentence was based upon prosecutorial misconduct

---

[1] The transcript of the change of plea proceeding is Attachment A to State's Response to Defendant's Motion for Post Conviction Relief which can be found at DE# 16; Ex. Z.

[2] The transcript of the sentence proceeding is Attachment B to State's Response to Defendant's Motion for Post Conviction Relief which can be found at DE# 16; Ex. Z.

in that the prosecutor during sentencing stated with no support whatever that he had lied to the police officer about his most-recent arrest and he had in his possession a freshly used crack pipe at the time of the arrest. (DE# 16; Ex. S). The state asserted that the sentence imposed was lawful, because it did not exceed the statutory maximum and because the trial court considered all relevant facts before imposing sentence. (DE# 16; Ex. T). The Florida Fourth District Court of Appeal affirmed Lisi's conviction and sentence in a *per curiam* decision without a written opinion and granted counsel's motion to withdraw. (DE# 16; Ex. U, V). See also Lisi v. State, 957 So. 2d 1180 (Fla. 4 DCA 2007)(table).

Before the mandate had issued in the direct appeal proceeding, Lisi returned to the trial court and filed a pro se motion for postconviction relief and supporting memorandum of law pursuant to Fla.R.Crim.P. 3.850. (DE# 16; Ex. X, Y). Petitioner raised the following two claims: (1) he received ineffective assistance of trial counsel in connection with his sentencing, because his lawyer failed to object to various improper statements made by the prosecutor, such as, Lisi was to appear at sentencing on the date scheduled, he was to be arrest-free and had done all that he was supposed to do, and that he had a freshly used crack pipe on his possession when arrested; and (2) his plea was involuntary entered in that it was the result of prosecutorial misconduct. Id. As to ground two, Lisi alleged that the state failed to apprise the court that the state had promised him a sentence of four years in exchange for his testimony in the King criminal prosecution and that the prosecutor during the King case improperly represented that Lisi' testimony at the King trial had not been based upon promises in exchange for the testimony. Id. The state filed a thorough and well-reasoned response with supporting exhibits, *citing* Strickland v. Washington, 466 U.S. 668 (1984) and arguing

that Lisi was not entitled to postconviction relief in that his claims were meritless as refuted by the record. (DE# 16; Ex. Z).

In a written order, the trial court summarily denied Lisi's Rule 3.850 motion for the reasons given in the state's response, a copy of which was attached to the order and incorporated therein. (DE# 16; Ex. AA). Lisi filed a motion for rehearing, asserting that the trial court's summary denial was improper and the trial court had failed to properly review and consider all his claims for relief, which he rephrased as multiple subclaims.[3] (DE# 16; Ex. BB). The trial court denied the motion for rehearing, stating as follows:

> [Lisi] appears to believe that issues addressed within his Memorandum were not considered by the Court. To the contrary, the Court considered [Lisi's] motion in its entirety. [Lisi] has presented nothing that this Court has overlooked or misapprehended....

(emphasis supplied)(Order Denying Defendant's Motion for Rehearing)(DE# 16; Ex. CC). Lisi took an appeal from the trial court's rulings. (DE# 16; Ex. DD, EE). Lisi again raised the

---

[3]Lisi essentially alleged that he received ineffective assistance of trial counsel, because his lawyer failed to: (1) object to improper hearsay statements made by the prosecutor during sentencing; (2) object to inappropriate and prejudicial statements made by the prosecutor at the sentencing hearing; (3) object to the state's threats and promises when counsel was fully aware that the state advised him that if he did not testify at the King trial, he would be implicated in the King case and be held in contempt until he did testify; (4) object to the state's request that he present false testimony at the plea and sentence proceeding and at the King trial that he had not been promised first an 8-year sentence and then a 4-year sentence if he were to testify at the King trial; (5) advise him that he would not be entitled to receive the state's offer if he failed to return for sentencing; and (6) convey and correctly advise him of the plea offer by the state. See Motion for Rehearing at 2-4. (DE# 16; Ex. BB). He further claimed that his plea was involuntary entered, because the state had initially promised him a sentence of four years and he, instead, received a sentence of fifteen years' imprisonment. Id. He also claimed that the state engaged in misconduct when it advised him to give false testimony at the plea hearing and sentencing and during the King trial to the effect that there was no plea deal. Id. He also alleged that the state made threats and promises in order to obtain his statement against Douglas King. Id.

substantive claims presented in his Rule 3.850 motion and motion for rehearing and also argued that the trial court's order was not adequately supported by the record, requiring a reversal for either attachments of pertinent portions of the record or for an evidentiary hearing. (DE# 16; EE). The appellate court issued a *per curiam* affirmance without written opinion. (DE# 16; Ex. FF). See also Lisi v. State, 976 So. 2d 1120 (Fla. 4 DCA 2008)(table).

IV.   Threshold Issues - Timeliness, Exhaustion and Procedural Bar

After all state court proceedings had concluded, Lisi came to his Court, filing the instant pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. As correctly conceded by the respondent, this petition has been timely filed. See 28 U.S.C. §2244(d)(1)-(2). Further, the claims of the instant petition have been properly exhausted and are not subject to any procedural bar. See 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State....").[4] See also Cone v. Bell, _____ U.S. _____, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009).

V.   Standard of Review

Petitioner filed his petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act

---

[4]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979).

of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Post-AEDPA law, therefore, governs this action. Abdul-Kabir v. Quarterman, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); Penry v. Johnson, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). It is important to recognize just how limited is this Court's review in a habeas proceeding. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L .No. 104-132, 110 Stat. 1214 (1996), provides that a federal court may not grant the writ unless the state court adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

As the United States Supreme Court explained in Williams v. Taylor, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In deciding whether a state court ruling involved an "unreasonable application" of federal law, this Court does not focus merely upon whether the state court decision was erroneous or incorrect; rather, this Court may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was

7

objectively unreasonable. *See id*. at 409-11. <u>See also</u> <u>Knowles v.</u>
<u>Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009).

The statutory phrase "clearly established Federal law" "refers
to the holdings, as opposed to the dicta, of [the U.S. Supreme]
Court's decisions as of the time of the relevant state-court
decision." <u>Williams v. Taylor</u>, 529 U.S. at 412, 120 S.Ct. at 1523
(majority opinion by O'Connor, J.). Further, "a state court's
decision is not 'contrary to ... clearly established Federal law'
simply because the court did not cite [Supreme Court] opinions....
[A] state court need not even be aware of [Supreme Court]
precedents, 'so long as neither the reasoning nor the result of the
state-court decision contradicts them.'" <u>Mitchell v. Esparza</u>, 540
U.S. 12, 16 (2003)(*quoting* <u>Early v. Packer</u>, 537 U.S. 3, 7-8 (2002).
Moreover, findings of fact by the state court are presumed correct,
and the petitioner bears the burden of rebutting that presumption
of correctness by clear and convincing evidence. <u>See</u> 28 U.S.C.
§2254(e)(1); <u>Crowe v. Hall</u>, 490 F.3d 840, 844 (11 Cir. 2007), *cert.*
*denied*, ___ U.S. ___, 128 S.Ct. 2053 (2008).

## VI. <u>Facts</u>

In order to fully appreciate the claims raised in the instant
proceeding and properly dispose of the claims, an extensive review
of the change of plea and sentencing proceedings is necessary.
There was no negotiated plea agreement in this case, and the case
involves an open plea of no contest to the court. <u>See</u> Transcript of
plea proceeding conducted on February 18, 2005; Transcript of
sentence proceeding conducted on June 24, 2005. Before Lisi entered
his open no contest plea, on February 18, 2005, he executed a
standard written plea form in the subject criminal case. <u>See</u> Plea
of No Contest to Criminal Charges in Circuit Court. (DE# 16; Ex.
G). The written plea of no contest indicated that the maximum

offense for the crime charged was thirty years' imprisonment, the minimum penalty was 21.75 months' imprisonment, and the sentencing guidelines range was 21.75 months to thirty years. <u>See</u> Plea of No Contest to Criminal Charges in Circuit Court at 1. (DE# 16; Ex. F). The plea form further indicated that the sentence pursuant to the plea was "open." <u>Id</u>. at 1. The written agreement expressly advised Lisi of all the constitutional rights he was waiving by entering into the plea agreement. <u>Id</u>. at 1–2. By executing the written plea form, Lisi indicated that he understood the possible penalties that could be imposed pursuant to the open plea of no contest and understood and agreed to waive his constitutional rights. <u>Id</u>. at 1–2.

On the same date that he executed the written plea form, Lisi appeared before the trial court for change of plea proceedings. <u>See</u> Transcript of proceeding conducted on February 18, 2005. Also, on that date, the state filed a second notice of its intent to declare Lisi a habitual felony offender (DE# 16; Ex. H). Before the formal plea proceeding commenced, trial counsel advised the court that "this change of plea involves [Lisi] flipping on his co-defendant."[5] <u>See</u> Transcript of proceeding conducted on February 18, 2005, at 2. When the court asked whether the plea was an open plea, trial counsel responded affirmatively. <u>Id</u>. When the court next asked whether there had been a plea offer made by the state, trial counsel answered that the change of plea was not the product of a negotiated plea entered into with the state and that Lisi would be seeking a downward departure sentence solely on his cooperation in the case. <u>Id</u>. Lisi was then sworn and the trial court conducted a thorough and careful plea colloquy. <u>Id</u>. at 3–18. At the outset, the

---

[5]Trial counsel later corrected her statement, indicating that Lisi had been listed as a *witness* for the prosecution where Douglas King was the defendant. <u>See</u> Transcript of proceeding conducted on February 18, 2005, at 3–4.

trial court advised Lisi that if at any time during the proceeding he did not understand what was being asked and/or he needed to consult with trial counsel, he should notify the court and the question would be rephrased and/or he would be afforded as much time as needed to consult with counsel. Id. at 3. The trial court told Lisi that this was to ensure that his no contest plea was knowingly, intelligently and voluntarily entered. Id. When the court asked Lisi if he understood, Lisi responded, "Yes, ma'am." Id.

The trial court advised Lisi that the state was seeking a declaration from the court that he was a habitual felony offender, and Lisi indicated that he understood. Id. at 4-6. The court went on to explain that based upon such a declaration, he was subject to a term of imprisonment of thirty years with no possibility of receiving any gaintime. Id. at 6. Lisi told the court that he understood the ramifications of a habitual felony offender sentence and he indicated that he had no questions regarding the charge against him, the habitual felony designation, and possible penalties. Id. In order to ensure that Lisi understood the possible sentence he could receive at a future sentence proceeding, the trial court stated:

> For now, the only thing I can tell you is that it is an open plea to the Court, I could sentence you up to thirty years in Florida State Prison if, after I hear the entire presentation during the sentencing hearing, I feel that the appropriate sentence is thirty years in Florida State Prison and if I enter a thirty year sentence, it is a legal sentence.

Id. 6-7. When the court asked Lisi if he understood what was just explained, he unhesitatingly answered, "Yes, ma'am." Id. When asked if anyone, including trial counsel, had represented to him, promised him or guaranteed him a particular sentence, Lisi responded in the negative. Id. at 7.

With regard to a possible lesser sentence Lisi could obtain for his cooperation with the state, the following exchange took place between the court and Lisi:

THE COURT:          ...You understand that the State intends to call you as a witness in the matter of the State of Florida versus Douglas King. However, they are not offering you now, they are not going to offer you in the future, they have no intentions whatsoever of giving you any benefit, any credit or anything by the fact that you have pled open to the Court in this case. Do you understand that?

THE DEFENDANT:     Correct.

THE COURT:          Do you understand that the only benefit that you may hope to receive is that this Court takes into consideration the fact that you pled open to the Court and you took responsibility. The Court can take into consideration anything that you have done to resolve this case and to resolve other cases. The Court can take into consideration anything you have done in this case or in resolving other cases cooperation with the police to determine whether in fact factually there is evidence to support that you have cooperated with the State to resolve the current offence [sic] or any other offence [sic], and if the Court finds that, that may be used as a mitigator, as a reason to depart from the bottom of the guidelines for a downward departure because you're scoring mandatory prison range. Do you understand that?

Id. at 8-9. Lisi apparently indicated that he did. Id. at 9. The court went on to again advise Lisi that based upon the Criminal Punishment Code Scoresheet,[6] which took into account his past criminal history, his sentencing guidelines range was a minimum of 21.75 months' imprisonment up to 30 years' imprisonment. Id. Lisi

_____

[6]A copy of the Criminal Punishment Code Scoresheet can be found at DE# 16; Ex. M.

11

indicated that he understood his range of punishment. Id. at 9-10. Id. at 9. The court further stated that even if it found a lawful ground for a downward departure sentence, which in this case was solely his cooperation with the state, the court could nevertheless not impose a downward departure sentence and, instead, sentence him within the sentencing scoresheet range. Id. at 10, 10-1, 11-2. Lisi once again unequivocally indicated that he understood that the sentence to be imposed was within the sole discretion of the court. Id. at 10-12. To make certain that Lisi understood the ramifications of an open plea to the court, the court stated: "That [downward departure] is not up to the State, they're not offering you a thing. It would have to be me. Do you understand that?" Id. at 10. Lisi answered, "Yes, ma'am." Id. The court expressly stated that it was making no promises, guarantees or representations whatever regarding whether it would grant a downward departure and what the sentence would be and further advised Lisi that he was to rely solely on what the court stated with regard to sentence and to listen to no one else, including his lawyer. Id. at 11-2. Lisi once again indicated that he understood and confirmed that his understanding was not different from what the court had explained. Id.

Lisi next advised the court that he had read and understood all contained in the executed plea form. Id. at 13. He further stated that he understood all constitutional rights he was waiving by entering the no contest plea, as outlined in the plea form and explained by his attorney, and that he wanted to waive those rights and enter the no contest plea. Id. at 13-4, 15-7. When the court asked Lisi if he was satisfied with the services rendered by counsel, Lisi responded: "Definitely." Id. at 14. The court then asked Lisi, "You want me to accept your open plea and wait to sentence you when you finish testifying in Douglas King so I can

12

take that into consideration?" <u>Id</u>. Lisi answered affirmatively. <u>Id</u>. He next denied that he had been forced, coerced or in any way threatened into entering the plea. <u>Id</u>. at 14-5, 20. Lisi advised the court that it was in his best interest to change his plea of not guilty to an open plea of no contest. <u>Id</u>. at 15.

Before accepting the change of plea, the trial court asked the state to list all Lisi's prior convictions, as revealed by certified copies of those convictions, and asked Lisi to listen to the state's recitation of the convictions.[7] <u>Id</u>. at 18. The state then went on to list eleven prior convictions after which the court asked Lisi if those were in fact his prior convictions. <u>Id</u>. at 18-20. Lisi answered that they were and that none of those convictions had been set aside or reversed and he had received no pardons. <u>Id</u>. at 20. Finally, when the court asked if anyone had told him, represented or promised him anything different from what had been discussed in open court, Lisi answered that no one had and that included his lawyer. <u>Id</u>. at 20. When the court asked Lisi if he had any questions or any matters he wanted to bring to the court's attention, Lisi responded that he had no questions and that he would address issues at sentencing. <u>Id</u>. at 20-1. After trial counsel stipulated to a factual basis for the plea, as set forth in the sworn probable cause affidavit, the court  incorporated the sworn probable cause affidavit into the plea.[8] <u>Id</u>. at 21. The court

---

[7]<u>See</u> Designation for Assignment to Criminal Court with attached criminal history. (DE# 16; Ex. C).

[8]The Probable Cause Affidavit states in pertinent part as follows:

The Victim's residence was burglarized on the 18th of January. Of the items taken was a unique necklace link. On the 21st of January Lisi went to Green Goddess Pawn ... and sold a gold necklace link for $30.00. On the 16th of February the Victim met [Detective Jack Gee] at the pawnshop and positively identified the link as being his and taken during the burglary. The Victim advised that he did know Lisi. Lisi had done handyman work around the house approximately one month prior to the burglary. Lisi did not have permission or consent to take the item or to sell it. The fingerprint left on the pawn

then accepted the change of plea as knowingly and voluntarily
entered, finding that it was supported by a sufficient factual
basis. Id. at 21-3. The court further found that Lisi qualified as
an habitual felony offender. Id. at 21-3. Sentencing was deferred
until March 21, 2005, after the Douglas King case had been resolved
and Lisi had had the opportunity to testify. Id. at 23-4.

Although Lisi appeared for the sentence proceeding scheduled
for March 21, 2005, he requested a continuance of the proceeding
and a furlough to avoid contact at the jail with then-convicted
defendant King. See Transcript of sentence proceeding conducted on
June 24, 2005, at 5, 7. The trial court granted the request,
released Lisi on bond and reset the sentencing for April 22, 2005.
Id. On March 24, 2005, Lisi filed, through counsel, a motion for
downward departure pursuant to Fla.Stat. §921.0026(2)(i) on the
basis that he had "cooperated with the state to resolve the current
offense or any other offense." (DE# 16; Ex. I). Lisi, who had been
released on bond until sentencing, failed to appear for sentencing
scheduled for April 22, 2005. Id. at 5-7, 8-9. Consequently, his
bond was revoked and a warrant was issued for his arrest. Id. at 8-
9. Lisi was ultimately arrested on June 8, 2005, and a search
incident to the arrest revealed a freshly used crack pipe. Id. at
9.

Sentencing was conducted on June 24, 2005, during which Lisi
addressed the court and he described the personal circumstances
which he claimed led to the commission of the subject offense and
the circumstances which resulted in missing the earlier scheduled
sentence proceeding. Id. at 5-7. Specifically, as to Lisi's

---

ticket was checked by Ft. Lauderdale Police Fingerprint Examiner and
positively identified as belonging to Lisi....

(Complaint Affidavit executed by Detective Jack Gee on February 18, 2004).

failure to appear for sentencing, Lisi and trial counsel informed the court that Lisi's testimony in the King case caused his ex-girlfriend and their child to move, out of fear for their safety. Id. Lis then felt a responsibility to assist them in that move and to find them suitable housing. Id. Lisi stated that he was working to obtain the money to give to them to pay for the move from a hotel where they had been staying. Id. Trial counsel also apprised the court that because of the testimony provided by Lisi in the King case, the state was successful in obtaining a conviction against King. Id. at 7. Trial counsel then stated that the state's initial plea offer was four years and, due to Lisi's failure to appear for the earlier scheduled sentencing, a sentence no greater than four years would be appropriate, especially where the bottom of the sentencing guidelines range was 21.75 months. Id. at 7-8. Counsel added that even if a greater sentence was warranted based upon Lisi's failure to appear for sentencing, a sentence between no longer than six years was warranted. Id. at 8.

The successor prosecutor was then given the opportunity to address the court, and he stated as follows with regard to the appropriate sentence to be imposed in this case:

> I did talk to [prosecutor] Ms. Vogel last night in reference to this, your Honor. The number that she had with the plea offer was eight years. Now, I don't doubt [trial counsel] Ms. Achille for a minute because I've worked with her in the past. I think that what she's talking about is a number that Ms. Murphy[9] said she might come in and recommend after [the King] trial or whatever, but Ms. Vogel had never mentioned four years. In fact, mentioned eight, and did want me to pass on to the Court that when he took his plea one of the things the Court talked about was that he comes back arrest free and he shows up on the day and does everything he's supposed to do. Ms. Vogel indicated that when he did not show up that, quote/unquote, all bets were off, as it were, I guess, at that

---

[9]Prosecutor Murphy was apparently the prosecutor in the King criminal proceeding.

15

> point, and he was then arrested on a warrant, and when he was
> arrested by the Hollywood officer in this case he told the
> officer that the warrant was no good, which was not true, and
> he was caught with a crack pipe. The Hollywood officer did not
> ultimately bring that to the State Attorney's Office for
> filing, but she did think it was something that Your Honor
> ought to know. So as he sits here and says he was just trying
> to get his family life settled, in fact, he lies to the
> officer about the warrant, has a crack pipe on him that had
> been freshly used.

Id. 8-9. The state then argued that under all the circumstances of
this case where Lisi had not appeared for sentencing and had been
arrested on a new offense, and in light of Lisi's extensive
criminal record, a sentence somewhere "in double digits" was
warranted. Id. at 9-10.

The trial court then proceeded to sentence Lisi, stating as
follows:

> The Court has taken into consideration the totality of the
> circumstances, including, but not limited to, your cooperation
> with the State, and also the fact that I don't understand why
> you would not have come to the Court and asked for a second
> chance to have some additional time, I granted it to you the
> first time, you were out of custody, I didn't take you in, you
> gave me the reasons and I did that, and I would have listened
> to you again and I would have taken it into consideration.
>
> At this time the Court is adjudicating you. As a Habitual
> Felony Offender the Court is sentencing you to 15 years in
> Florida State Prison. The credit for time served is 444 days.

Id. at 10-11.

## VII. Discussion

The gist of Lisi's challenge to his conviction and sentence is
that his conviction was obtained by a plea of no contest which was
unlawfully induced or not made voluntarily with understanding of
the consequences of the plea in that the plea was based upon
ineffective assistance of trial counsel and prosecutorial

misconduct.[10]  He further claims that his plea was based upon misrepresentations regarding the sentence that was to be imposed pursuant to his plea of no contest. Specifically, he alleges that he was promised a sentence of eight years' imprisonment before he agreed to cooperate with the state and then a four-year sentence after he cooperated. Lisi is not entitled to relief in this habeas corpus proceeding.

It is apparent from the extensive review of the record above that Lisi's no contest plea was entered freely, voluntarily and knowingly with the advice received from competent counsel and not without the understanding of the direct consequences of the plea. See Boykin v. Alabama, 395 U.S. 238, 243 (1969); Brady v. United States, 397 U.S. 742, 748 (1970).[11] See also Hill v. Lockhart, 474 U.S. 52 (1985); Strickland v. Washington, 466 U.S. 668 (1984).[12]

---

[10]The specific allegations of ineffective assistance of trial counsel and prosecutorial misconduct can be found at note 3, *infra.*

[11]It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984). A guilty plea must therefore stand unless induced by misrepresentation made to the accused person by the court, prosecutor, or his own counsel. Mabry, 467 U.S. at 509, quoting, Brady v. United States, 397 U.S. at 748. The general principles of law with regard to guilty pleas are equally applicable for pleas of *nolo contendere.* North Carolina v. Alford, 400 U.S. 25, 37 (1970).

[12]The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel. U.S. Const. Amend. VI.  In order to prevail in this habeas corpus proceeding on his claim of ineffective assistance of counsel, the petitioner must make a particularized showing of an identifiable lapse in counsel's performance which falls below constitutional standards, and the petitioner must establish that the error was prejudicial, that is, but for counsel's error, there is a reasonable probability that the ultimate result would have been different. Strickland v. Washington, 466 U.S. 668 (1984).  Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Id. In assessing whether a particular

Lisi has also failed to demonstrate that the no contest plea in this case was in anyway induced by misrepresentations (including unfulfilled or unfulfillable promises) made to him regarding any particular sentence by his own counsel, the state and/or the court or that there was a breach of any plea agreement here. See Mabry v. Johnson, 467 U.S. 504, 509. (1984); Santobello v. New York, 404 U.S. 257 (1971).[13]

As indicated, before entering the open plea and before the plea was accepted by the trial court, Lisi was clearly advised of the implications of entering an open plea to the court and that, by entering such plea, he could receive any lawful sentence up to the statutory maximum. Lisi was meticulously and properly advised by the trial court of the possible maximum sentence he faced if he elected to enter an open plea of no contest. This case did not involve a negotiated plea with the state. During the plea colloquy, Lisi repeatedly indicated that he had not been promised or guaranteed any particular sentence by counsel, the state or the court and that he understood that the sentence to be imposed was within the sole discretion of the court.

The only assurance Lisi had with regard to sentencing was

_____

counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Id. at 689. The court need not address both prongs of the Strickland standard if the complainant has made an insufficient showing on one. In the context of a case in which guilty pleas are entered, application of the second prong of the two-pronged standard of Strickland requires a showing that there is a reasonable probability that but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). A claim of ineffective assistance is a mixed question of law and fact. Strickland, 466 U.S. at 698.

[13]If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may therefore challenge the guilty plea under the Due Process Clause. Mabry v. Johnson, 467 U.S. 504, 509 (1984). See also Santobello v. New York, 404 U.S. 257 (1971).

expressed by the trial court that it would not exceed the statutory maximum, and Lisi clearly indicated that he understood his possible sentence. He further indicated that he understood that even if he had cooperated with the state and had done everything he possibly could do to lawfully be entitled to a downward departure sentence, the trial court could nevertheless sentence him to the maximum term of imprisonment of thirty years. The trial court went to great lengths to inform Lisi that the state was not in any way then at the time of the change of plea offering him any benefit whatever for his cooperation in the unrelated criminal case and/or any benefit for the entry of the no contest plea and would not offer any future benefit at the time of sentencing. See Transcript of plea proceeding conducted on February 18, 2005, at 8-9. At all times during the proceeding, Lisi indicated to the court that he understood. Id. Never during the plea proceeding did Lisi ask the court to explain what was transpiring and never did he ask for a recess to consult with counsel. Lisi's sworn responses made in connection with the entry of the no contest plea carry a strong presumption of truthfulness and pose a formidable barrier in subsequent collateral proceedings. See Blackledge v. Allison, 431 U.S. 63, 74 (1977); Kelley v. Alabama, 636 F.2d 1082, 1084 (5 Cir. Unit B. 1981).

Even if before the plea proceeding it was in some way conveyed to Lisi that he was to receive a particular lesser sentence, such as eight years, Lisi was repeatedly advised otherwise in no uncertain terms by the trial court before he decided to proceed with the change of plea and before the open no contest plea was accepted by the court at the plea proceeding. A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. See Daniel v. Cockrell, 283 F.3d 697, 703 (5 Cir. 2002). As long as the

19

defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands. Id. Similarly, a defendant's reliance on his attorney's erroneous prediction of leniency, or in this case an alleged shorter imprisonment time, is not sufficient to render a guilty plea involuntary. See Beckham v. Wainwright, 639 F.2d 262, 265 (5 Cir. 1981)("[a]n erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance." An attorney's "good faith but erroneous prediction of a sentence ... does not render the guilty plea involuntary."). See also United States v. Harmon, 139 F.3d 899 (5 Cir. 1998)(finding that the defendant could not "claim that his guilty plea was involuntary based upon his attorney's erroneous prediction about the length of the sentence"); United States v. Stumpf, 827 F.2d 1027, 1030 (5 Cir. 1987)("a defendant's reliance on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea involuntary").

Lisi's assertion that he was promised a lesser sentence by the state *after* he had provided his cooperation, which was after the change of plea proceeding had been conducted, is wholly conclusory with no substantiation whatever in the record except for Lisi's self-serving statement. The claim is, therefore, unworthy of federal habeas corpus review.[14] Any such claim is also clearly refuted by the record. During the sentence proceeding, the state adamantly advised the court that the state had not promised Lisi a

---

[14]Lisi has not supported his claim with any evidence whatever, such as, an affidavit from trial counsel or the prosecutor. Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11 Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)). See also Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983).

particular sentence either before or after the plea proceeding. <u>See</u> Transcript of sentence proceeding conducted on June 24, 2005, at 8-9. Thus, the trial court properly found that Lisi's no contest plea had been voluntarily and intelligently entered, and rejected his claim in the postconviction proceeding that the plea had been the product of misrepresentation or unfulfilled promises regarding the subject sentence.

Lisi also claims that his sentence was improperly based upon false statements made by the state during sentencing and trial counsel rendered ineffective assistance of counsel when he failed to object to any or all of those misstatements. It is undisputed that a state's knowing use of materially false evidence in a criminal prosecution is violative of due process principles. <u>See</u> <u>Giglio v. United States</u>, 405 U.S. 150, 153 (1972); <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959). Again, other than Lisi's conclusory self-serving assertions, there is absolutely no evidence whatever in the record to support his contention. Therefore, his claims of ineffective assistance of trial counsel and prosecutorial misconduct must fail. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985); <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See also</u> <u>Giglio</u>, 405 U.S. at 153; <u>Napue v. Illinois</u>, 360 U.S. at 269.

Further, even if this Court accepts as true for purposes of this federal proceeding Lisi's assertion that various statements made by the prosecutor were untrue and trial counsel's performance was deficient for failing to object to any or all of those statements, it is apparent from full review of the record that Lisi's fifteen-year sentence was not based upon the alleged false statements. The trial court carefully considered and reviewed all relevant surrounding circumstances of the crime for which Lisi had entered his plea of no contest, Lisi's cooperation with the state

in the unrelated criminal case, and Lisi's failure to appear for sentencing. It does not appear that the court based the sentence upon the most-recent arrest and/or allegation that he possessed a crack pipe at the time of the arrest. The court did not mention such facts at all before imposing sentence, only the fact that Lisi had not requested additional time from the court and, instead, took it upon himself to not appear for the scheduled sentencing date. The fact that Lisi did not obtain a more favorable sentence was not due to the actions, or more appropriately inaction, of trial counsel or prosecutorial misconduct. Under the circumstances of this case, where Lisi had an extensive criminal history; where he clearly qualified as an habitual felony offender; where there was no cooperation agreement entered into with the state; and where Lisi failed to appear for sentencing after he had been granted release on bond, the lengthy sentence was appropriate in this case.

Finally, any assertion by Lisi that he would not have entered the no contest plea but would have instead gone to trial on the crime charged is clearly not credible. The record in this case indicates that there was a sufficient factual basis for the plea, as found by the trial court during the plea proceeding. Moreover, Lisi acknowledged during the plea proceeding that entry of the no contest plea was in his best interest. Based upon Lisi's cooperation with the state, trial counsel filed a motion for downward departure and also vigorously argued at sentencing that a sentence in the four to six-year range was appropriate when taking into account his failure to appear. It is highly unlikely that the trial court would have imposed a lesser sentence without the plea of no contest after a trial proceeding where he was found guilty of the subject offense and where his extensive criminal history would again have resulted in a declaration that he qualified as a habitual felony offender. Here, Lisi was sentenced to a term of

fifteen years' imprisonment where he could have received a term as great as thirty years.

    While it is apparent that he does not now believe so, Lisi received a benefit from entering into the open plea to the court in that an even harsher outcome was likely if he proceeded to trial. In other words, even if counsel's performance can be viewed as deficient for any or all of the reasons alleged, based upon the above-reviewed record, Lisi has not demonstrated that his sentence was increased by the deficient performance of his attorney or, in the converse, that his sentence would have been less harsh. See Glover v. United States, 531 U.S. 198, 121 (2001)(holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established Strickland prejudice"); Spriggs v. Collins, 993 F.2d 85, 88 (5 Cir. 1993)(*cited* in Glover ). The entry of the plea was clearly in the best interest of the petitioner, and counsel's performance was not constitutionally ineffective with regard to the no contest plea and/or sentencing. See Hill v. Lockhart, 474 U.S. 52 (1985); Strickland v. Washington, 466 U.S. 668 (1984).

    Moreover, as noted above, Lisi was permitted to raise any and all issues in a Rule 3.850 motion, which he did. Although, he did not obtain the relief he sought in the postconviction proceedings, he did obtain review on the merits of all claims by the trial court and review of the trial court rulings on the merits by the Florida Fourth District Court of Appeal. Lisi has not demonstrated that he received constitutionally ineffective assistance of counsel, see Strickland v. Washington, supra, or was in any way denied due process with regard to any and all challenges to his conviction and

sentence.[15]

Full review of the record yields no suggestion that the state court findings of fact,[16] albeit implicit findings, made during the direct appeal and state postconviction proceeding were not supported by the record or were otherwise deficient and the findings therefore must be presumed correct.[17]   28 U.S.C. §2254(e).

---

[15]If Lisi is in fact attacking the summary denial of his motion for postconviction relief by the trial court, which was affirmed by the appellate court, as improper, any such claim is not cognizable in this federal petition, as asserted by the respondent. Title 28 U.S.C. §2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding. Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition. Williams v. State of Missouri, 640 F.2d 140, 143 (8 Cir.), cert. denied, 451 U.S. 990 (1981). See also Spradley v. Dugger, 825 F.2d 1566, 1568 (11 Cir. 1987)(holding that state court's failure to conduct hearing on inmate's motion for postconviction relief and failure to attach relevant portions of record did not undermine validity of inmate's conviction and, therefore, did not state basis for habeas corpus relief); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8 Cir.1990)(stating that "Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding"), cert. denied, 495 U.S. 936 (1990). But see Dickerson v. Walsh, 750 F.2d 150, 152-53 (1 Cir. 1984). The alleged failure of the state court to attach relevant portions of the record to its order of denial and/or conduct evidentiary proceedings on the postconviction motion in this case in no way undermines the validity of petitioner's conviction and sentence. Review of the record of the state postconviction proceedings reveals that Lisi clearly received the review to which he was entitled under state law.

[16]It should be noted that the trial court judge presiding over the change of plea and sentence proceedings was the same judge who presided over the subject state postconviction proceedings. Where the judge presiding over the trial proceedings or, in this case plea proceedings, is the same judge presiding over the post conviction proceedings, the presumption of correctness afforded the findings of fact of the state court is particularly strong. See May v. Collins, 955 F.2d 299, 314 (5 Cir.), cert. denied, 504 U.S. 901 (1992).

[17]Federal courts in habeas corpus proceedings are required to grant a presumption of correctness to state court's explicit and implicit findings of fact, if supported by the record. 28 U.S.C. §2254(e)(1); Green v. Johnson, 160 F.3d 1029, 1045 (5 Cir. 1998), cert. denied, 525 U.S. 1174 (1999). Thus, even where the state courts make no express findings, federal courts reviewing petitions for habeas corpus are entitled to "reconstruct the findings of the state trier of fact, either because his view of the facts is plain from his opinion or because of other indicia." Fike v. James, 833 F.2d 1503, 1505-06 (11 Cir. 1987), quoting, Townsend v. Sain, 372 U.S. 293, 314 (1963), overruled in part on other grounds, Kenney v. Tamayo-Reyes, 504 U.S. 1 (1992). Accordingly, if it is clear that the trial court would have granted the relief sought by the

Having correctly made such determinations, the subject conviction and resulting sentence imposed by the trial court were lawful, as determined by the state courts. For the reasons stated above, Petitioner is not entitled to habeas corpus relief on any of the claims presented. When viewing this case in its entirety, the alleged errors, neither individually nor cumulatively, infused the proceeding with unfairness as to deny Petitioner due process of law. Contrary to Lisi's assertion, the result of the open no contest plea proceedings and sentencing was not fundamentally unfair or unreliable. See generally Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993); United States v. Cronic, 466 U.S. 648, 659 (1984).

In conclusion the rejection by the state courts of Lisi's challenges to his no contest plea and resultant sentence was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000).[18] See also Knowles v. Mirzayance, ____ U.S. ____, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009), citing, Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per

---

petitioner had it believed the testimony of certain witnesses, "its failure to grant relief was tantamount to an express finding against the credibility of [those witnesses]." Marshall v. Lonberger, 459 U.S. 422, 433 (1983), citing, LaVallee v. Delle Rose, 410 U.S. 690 (1973). It is apparent from the state court's denial of Lisi's claims in the postconviction proceeding that the courts disbelieved his assertions regarding the lawfulness of the plea and sentence proceedings.

[18]It is noted that "a state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(quoting Early v. Packer, 537 U.S. 3, 7-8 (2002).

curiam).[19]

## VIII. <u>Evidentiary Hearing</u>

Petitioner's request for an evidentiary hearing on his claims should be denied. An evidentiary hearing is not required in this case, because the habeas petition can be resolved by reference to the state court record. 28 U.S.C. §2254(e)(2); <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## IX. <u>Conclusion</u>

It is therefore recommended that the petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this <u>22</u>nd day of March, 2010.

_____

UNITED STATES MAGISTRATE JUDGE

---

[19]A habeas court's review of a claim under the *Strickland* standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009), *citing*, <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." <u>Id</u>. (citations omitted). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id</u>.

cc:  Michael L. Lisi, <u>Pro</u> <u>Se</u>
     DC# 722845
     Sumter Correctional Institution
     9544 County Road 476B
     Bushnell, FL 33513-0667

     Heidi L. Bettendorf, AAG
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428